Samuel Rabin, J.
Petitioner seeks an order declaring that the Liberal party is not legally constituted within the County of Queens and that the petition purporting to substitute Irving Mosberg as candidate for nomination for public office of member of Senate, from the Sixth Senate District, County of Queens, in the Liberal party primary, is invalid and void.
Petitioner contends that the Liberal party is not legally constituted in Queens County because it does not have a county committee constituted by the election of at least two members in 25% of the'election districts within the county,, in accordance with subdivision 2 of section 12 of the Election Law, as amended by chapter 701 of the Laws of 1960, As authority for his position he relies on the determinations in the eases of Matter of Newman v. Millspaugh (9 A D 2d 715, affd. 7 N Y 2d 756) and Buechel v. Bosco (9 A D 2d 916).
Matter of Newman v. Millspaugh held that the county committee of the Liberal party in Sullivan County, which was not constituted in accordance with section 12 of the Election Law, could not nominate candidates for town offices in the Town of Thompson, Sullivan County, in the general election to be held November 3, 1959. The rationale of this holding is contained in the following language of the memorandum opinion of the Appellate Division, Third Department: “ Section 12 of the Election Law provides: ‘ The county committee of each party shall be constituted by the election in each election district within each county of at least two members. ’ This language is mandatory (ef. § 14). Since the committee in question was not legally constituted for the Liberal party in Sullivan County any action it undertook thereafter such as the election of an executive committee was of necessity null and void, and in turn adversely affects a certificate of nomination to the same degree.” It is to be noted that the population of Sullivan County, according to the 1950 census, was 40,731 (N. Y. Legis. Manual, 1959, p. 1001).
In Buechel v. Bosco (supra) the Appellate Division of the Second Department unanimously affirmed an order refusing after election to annul the nomination by the Liberal party to the office of Supervisor of the Town of Patterson, Putnam *312 County, on the ground that every nomination, if claimed to be invalid, must be challenged before the election in accordance with the provisions and time limitations fixed by statute. The court noted, however, ‘ ‘ It appears that there was no legally constituted Liberal Party in Putnam County, since it had not elected a sufficient number of committeemen as required by law (Election Law, § 12; Matter of Newman v. Millspaugh, 9 A D 2d 715, affd. 7 N Y 2d 756). Its nomination of a candidate, therefore, was unauthorized.” The population of Putnam County, it may be noted, as of the 1950 census, was 20,307. (N. Y. Legis. Manual, 1959, p. 995.)
It is conceded that the county committee of the Liberal party of the County of Queens does not number 25% of the committeemen required to be elected in such county. (Election Law, § 12, subd. 2, as added by L. 1960, eh. 701, eff. April 21, 1960.)
The office involved, however, is that of State Senator from the Sixth Senatorial District of the State of New York, the boundaries of which are completely located within the County of Queens. The question, therefore, is whether the designation by the enrolled voters of the Liberal party for nomination to such public office is valid, notwithstanding the fact that the county committee of such party has not been legally constituted in accordance with section 12 of the Election Law as amended.
Party nominations are governed by subdivision 5 of section 131 of the Election Law (as amd. by L. 1958, ch. 8, eff. Feb. 6, 1958), providing in pertinent part that “ Party nominations of candidates for town and village offices, in any county, shall be made in the manner prescribed by the rules of the county committee, heretofore or hereafter adopted, except that in any town in a county having a population of over seven hundred fifty thousand inhabitants * * * . party nominations of candidates for town offices shall be made at the fall primary preceding the election ”. (Emphasis supplied.) It has already been stated that the population of the Counties of Sullivan and Putnam, respectively involved in the Neiuman and Buechel cases {supra), was far less than the 750,000 population exception contained in the just quoted statutory provision. A fortiori, under the controlling provision of subdivision 5, the party nominations for the town office there involved had to be under the rules of duly constituted county committees which were found lacking.
The requirements for party nominations for the office of State Senator seem to be contained in subdivision 8 of section 131, which provides as follows: “ Party nominations of candidates for all offices to be filled at a general election, except as above *313 provided, shall be made at the preceding fall primary.” Party nominations for such officers are not made under rules of a county committee, but by the signatures of 750 “ enrolled voters of the party residing within the political unit in which the office or position is to be voted for” (Election Law, § 136, subd. 2, par. [d], as amd. by L. 1957, ch. 554, § 2).
Newman and Buechel (supra), therefore, are distinguishable on the grounds that the town officers there involved were plainly governed by subdivision 5 of section 131 of the Election Law (see, also, Matter of Burns v. Board of Elections, 9 Misc 2d 360). The office of State Senator is just as plainly governed by subdivision 8 of section 131 of the Election Law. As this court sees it the holdings in both the Newman and Buechel cases were intended to apply only to those situations which required action by or under the rules of a county committee as distinguished from direct action by enrolled voters. The original petition designating Benjamin J. Taruskin in the first instance as candidate for nomination for public office of member of Senate from the Sixth Senate District, Queens County, in the Liberal party was, therefore, valid.
This leaves for determination the question of the validity of the purported substitution of Irving Mosberg in place of Taruskin. Irving Mosberg is an enrolled Democrat and not a member of the Liberal party. Therefore, the substitution of his name for Taruskin could only be made in accordance with subdivision 4 of section 137 of the Election Law which, in pertinent part, provides as follows:
“ § Í37. Limitations on the right to designate or nominate party candidates.
“ 4. Notwithstanding the provisions of subdivisions one, two and three of this section, at a meeting of the members of the party committee representing the political subdivision of the office for which a designation or nomination is to be made, or of such other committee as the rules of the party may provide, except as hereinafter in this subdivision provided with respect to certain offices in the city of New York, by a majority vote of those present at such meeting provided a quorum is present, such committee may authorize the designation or nomination of a person as candidate for any office who is not enrolled as a member of such party as provided in this section.”
The purported compliance with the foregoing consisted in the filing of a certificate authorizing Mosberg’s designation, by the Queens County Executive Committee of the Liberal party. This was done in accordance with the rules of the Liberal party, *314 Queens County, which provide, in part, as follows: ‘‘ The county executive committee shall consist of the officers of the county committee and three representatives of each club, composed of the club chairmen plus two others designated by the club * * * the Queens County Executive Committee may at any meeting by a majority vote of the members present at such meeting, providing a quorum is present, authorize the designation, nomination or substitution of a person 'as a candidate for any office who is not enrolled as a member of the Liberal Party”. (Emphasis supplied.)
This court agrees with the learned counsel for the respondents when he states at page 4-A of his brief that “ the intent of the Election Law is to vest in the enrolled members of the party the power to designate candidates for public office and to nominate them, independent of any restrictions imposed by the form of organization which the party assumes either by statutory requirement or by virtue of its own rules ’ ’; and at page 6 of his brief: “ Clear it is that the very purpose of the law is to permit such designations free from the influence or control of those committees.”
Equally clear, however, is the fact that the attempted substitution of Mosberg as distinguished from the original designation of Taruskin was not made by the enrolled members of the Liberal party of Queens County. It was made by its county executive committee which under the party rules was given the sole power to select, name or file a certificate of authorization for a nonparty member in purported compliance with subdivision 4 of section 137 of the Election Law. But the county executive committee of the Liberal party in Queens County consists, among others, of the officers of the county committee, and since there is no legally constituted county committee of that party, as required by section 12 of the Election Law as recently amended, it follows that the executive committee of the Liberal party in Queens County as constituted by its rules could not legally serve as 1 ‘ the party committee representing the political subdivision of the office for which a designation or nomination is to be made ” within the meaning of the statute last mentioned with power validly to 1 ‘ authorize the designation or nomination of a person as candidate for any office who is not enrolled as a member of such party ”,
Accordingly the application is granted to the extent of declaring that the attempted designation of Irving Mosberg as substitute candidate for the public office of member of the Senate of the Sixth Senate District, County of Queens, in the Liberal party primary, was not anthorized and, therefore, is invalid, *315 The Board of Elections is accordingly restrained from printing and placing his name on the official ballot of the Liberal party to be voted on on primary day on June 7, 1960. Submit order.