■ In the Matter of JOSEPH LICITRA, Respondent, against JAMES M. POWER et al., Constituting the Board of Elections of the City of New York, et al., Respondents, and IRVING MOSBERG, Individually and as Candidate for Public Office of Member of Senate, Sixth Senate District, County of Queens, et al., Appellants. In the Matter of JOSEPH J. KUNZEMAN, Respondent, against JAMES M. POWER et al., Constituting the Board of Elections of the City of New York, et al., Respondents, and JACK E. BRONSTON, Individually and as Candidate for Public Office of Member of Senate, Fifth Senate District, County of Queens, et al., Appellants.—Appeals by Leo Brown, Eve Davidson, Ben Davidson, Abe Dolgen, Frances Bora Di Pietro, Henry Schwartz, Irving Mosberg, and Jack E. Bronston, designated as respondents at Special Term, from orders of the Special Term, Supreme Court, Queens County, entered on May 24, 1960, granting the petitioners' applications and declaring that the designation of appellants Bronston and Mosberg as substitute candidates for the public office of Members of Senate, in the 5th and 6th Senatorial Districts in the County of Queens, in the Liberal party primary elections was unauthorized and invalid, and restraining the Board of Elections of the City of New York, from printing and placing such appellants' names on the official ballots of the Liberal party to be voted upon on Primary Day on June 7, 1960. Orders reversed on the law, without costs, and applications denied, the findings of fact are affirmed. Respondents Kunzeman and Licitra are the respective nominees of the Republican party for State Senate, 5th and 6th Senatorial Districts, Queens County. Special Term has found their grievances to be identical, and has written a full memorandum in the *Licitra* case only, and decided the *Kunzeman* case on the same basis. We need, therefore, speak only of the underlying facts and law involved in the *Licitra* matter. It appears that on or about May 3, 1960, the Liberal party filed a petition purporting to designate Benjamin J. Taruskin for the office of Member of the Senate, 6th Senatorial District. The petition named five persons as a Committee to Fill Vacancies. Subsequent thereto and on or about May 6, 1960, Taruskin declined the nomination. On or about May 10, 1960, the Committee to Fill Vacancies submitted the name of Irving Mosberg as substituted designee, and the Executive Committee of the Liberal party of the County of Queens then, on or about May 10, 1960, filed a Certificate of Authorization for Irving Mosberg as a nonparty member pursuant to subdivision 4 of section 137 of the Election Law. According to subdivision 1 of section 12 of the Election Law, the county committee of each party shall be constituted " by the election in each election district within such county of at least two members ", and is considered to be " legally constituted " if 25% of the required number have been elected (L. 1960, ch. 701, eff. April 21, 1960). Special Term has found that it was conceded that the county committee of the Liberal party of the County of Queens does not contain the minimum number of the 25% required to be elected in such county (*Matter of Licitra* v. *Power,* 22 Misc 2d 310). It further appears that since 1954 the rules of the Liberal party, Queens County, provide, in part, as follows : " The county executive committee shall consist of *the officers of the county committee* and three representatives of each club, composed of the club chairman plus two others designated by the club. * * * the Queens County Executive Committee may at any meeting by a majority vote of the members present at such meeting, providing a quorum is present, authorize the designation, nomination or substitution of a person as a candidate for any office who is not enrolled as a member of the Liberal Party." (Emphasis supplied.) The relevant section of the Election Law, under which the quoted Liberal party rule was adopted, is subdivision 4 of section 137, which, in pertinent part, reads as follows :

"4. \* \* \* at a meeting of the members of the party committee representing the political subdivision of the office for which a designation or nomination is to be made, or of *such other committee as the rules of the party may provide* \* \* \* by a majority vote of those present at such meeting provided a quorum is present, such committee may authorize the designation or nomination of a person as candidate for any office who is not enrolled as a member of such party as provided in this section." (Emphasis supplied.) Special Term has found that the original nomination of Taruskin was valid but that the substitution of Mosberg (in the *Licitra* case) was invalid. The basis for its determination was stated as follows: "Equally clear, however, is the fact that the attempted substitution of Mosberg as distinguished from the original designation of Taruskin was not made by the enrolled members of the Liberal Party of Queens County. It was made by its County Executive Committee which under the Party Rules was given the sole power to select, name or file a certificate of authorization for a nonparty member in purported compliance with subdivision 4 of section 137 of the Election Law. But the County Executive Committee of the Liberal Party in Queens County consists, among others, of the officers of the *County Committee,* and since there is no legally constituted County Committee of that Party, as required by section 12 of the Election Law as recently amended, it follows that the Executive Committee of the Liberal Party in Queens County as constituted by its Rules could not legally serve as 'the party committee representing the political subdivision of the office for which a designation or nomination is to be made \* \* \*' within the meaning of the statute last mentioned, with power validly to 'authorize the designation or nomination of a person as candidate for any office who is not enrolled as a member of such party \* \* \*.'" We are constrained to disagree with the learned Special Term Justice for the following reasons: (a) He overlooked the fact that the Liberal party is entitled to recognition as a duly constituted political organization in that it polled more than 50,000 votes for the office of Governor at the last State-wide election (Election Law, § 2, subd. 4), to wit, 283,926 votes (Legislative Manual of the State of New York, 1959, pp. 1060–1061). (b) He assumed that because there was an insufficient number of county committeemen to constitute a valid county committee of the party, as required by section 12 of the Election Law, the officers of such impotent body could not be counted among the personnel of the County Executive Committee of the Liberal party. This assumption seems unwarranted. The number of such officers is not stated, nor is any authority cited in support of the conclusion that the executive committee became legally tainted because some of its members may have been officers of the county committee. On the other hand, it is provided that "Party committees shall consist of a state committee, county committees, and *such other committees as the rules of the party may provide.* Existing committees shall continue until their successors are chosen as herein provided" (emphasis supplied) (Election Law, § 10). Thus, the executive committee is an instrument of party creation not specifically regulated by statute, and may operate with any personnel permitted by its own rules, and by such procedure as it may adopt (*Matter of Battipaglia* v. *Executive Comm. of Democratic County Comm. of County of Queens,* 9 A D 2d 774, appeal dismissed 7 N Y 2d 941). In the instant case, the executive committee of the Liberal party was, therefore, free to include among its personnel, officers of its county committee even though the latter committee, as such, was not legally constituted. Nor does it appear that such county committee officers were necessary for a quorum of the executive committee. It is to be noted, in passing, that no attack upon the County Executive Committee on any other ground was made at Special Term.

(c) Under the foregoing circumstances, there being no county committee which could or did act with respect to the issues at bar, the executive committee, of necessity, remained the only instrumentality which could speak for the lawfully constituted Liberal party. This view is in consonance with the ruling in *Matter of Gresser* v. *Cohen* (275 N. Y. 440, 445), where the Court of Appeals *Per Curiam* held, as follows: "We have reached the conclusion that where a vacancy has occurred and the County Committee has failed to exercise its powers * * * to fill such vacancy, and is not in session, that the Executive Committee * * * possesses the power to fill such vacancy. Otherwise, one of the two dominant political parties would be in the position of not having a candidate nominated upon the ballot for the office in which a vacancy has occurred, which would be contrary to the spirit and policy of our Government and the Election Law." Beldock, Acting P. J., Ughetta, Pette and Brennan, JJ., concur; Kleinfeld, J., not voting.

■ In the Matter of MOLLY PATRICK, Respondent, against VINCENT FONTI et al., Respondents. CHARLES BERKMAN, Appellant.— Order insofar as appealed from affirmed, without costs. No opinion. Motion for leave to appeal to the Court of Appeals denied. Beldock, Acting P. J., Ughetta, Kleinfeld, Pette and Brennan, JJ., concur.